**Paul L. POLETTE, Plaintiff,**

v.

**Shirley S. CHATER,[1] Commissioner of Social Security, Defendant.**

**No. 4:95cv483MLM.**

United States District Court, E.D. Missouri, Eastern Division.

April 10, 1996.

1. As of March 31, 1995, the Social Security Administration became an independent agency from the Department of Health and Human Services. Therefore, the Court has substituted Shirley S. Chater, Commissioner of Social Security, for Donna E. Shalala pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, § 106(d).

William G. Jurgiel, Suddarth and Koor, O'Fallon, MO, for plaintiff.

Henry J. Fredericks, Eric T. Tolen, Asst. U.S. Attorneys, St. Louis, MO, for defendant.

### *MEMORANDUM AND ORDER*

MEDLER, United States Magistrate Judge.

This is an action under Title 42 U.S.C. § 405(g) for judicial review of defendant Shirley S. Chater's ("Defendant") final decision denying plaintiff Paul Polette's ("Plaintiff") application for retirement insurance benefits under Title II of the Social Security Act. Both parties have moved for summary judgment [11, 13] and have consented to the jurisdiction of the undersigned United States Magistrate Judge for a report and recommendation pursuant to Title 28 U.S.C. § 636(c). [4]

### I.

### *PROCEDURAL HISTORY*

On October 19, 1992, Plaintiff filed an application for retirement insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, *et. seq.* (Tr. 36–39). On January 11, 1993, the Social Security Administration determined:

[T]he wage earner is not retired as defined under social security laws and regulations. It is further determined that the wage earner continues to render services in the same manner as prior to his retirement. Based on past services and salary, it is determined that the wage earner's estimate of earnings for 1992 is 60,000.00.

(Tr. 46). Thus, the Social Security Administration determined that Plaintiff was not entitled to retirement insurance benefits. (Tr. 45–46). Plaintiff then requested reconsideration. On July 20, 1993, a determination was issued finding that there was insufficient evidence to warrant a finding of retirement and, therefore, benefits would not be paid. (Tr. 50–54).

Plaintiff requested a hearing (Tr. 55) which was held on May 9, 1994, before Administrative Law Judge ("ALJ") Joseph J. Simeone. (Tr. 17–35). The ALJ determined that Plaintiff had not retired. Specifically, the ALJ found that Plaintiff had failed to overcome the presumption that he rendered services for wages of more than the applicable exempt amount as defined in the Social Security Act. (Tr. 8–11). The Appeals Council denied review of the ALJ's determination. (Tr. 2–3). Thus, the decision of the ALJ stands as the final determination of the Commissioner.

### II.

### *TESTIMONY BEFORE THE ALJ*

Only Plaintiff testified before the ALJ on May 9, 1994. He stated that he and his wife owned a business called Book Lures, Incorporated which manufactured, created and printed activity learning books for children. The company operates out of the basement of Plaintiff's home. (Tr. 24).

Plaintiff testified that on his 1993 return, he and his wife's joint income was $136,000. Of that, only $52,900 was for his wife's salary paid by the corporation. The remainder of her income consisted of royalties, a salary from Lindenwood College and a salary from the junior college district where she teaches. (Tr. 26).

Plaintiff testified in 1990 and 1991 his personal involvement with the corporation in-

volved attending approximately 40 exhibits. These exhibits required him to exhibit and display the books manufactured by his company. The exhibits required traveling across the country. In addition to attending exhibits, Plaintiff also transported books from the warehouse where they were stored, to his house. He also took care of the mail. (Tr. 27–28).

Plaintiff reported that in 1991 he worked full time for the company and earned a salary of $59,000. In 1992, his work started declining and his 1992 tax return shows no income from the company at all. (Tr. 28). In 1993, Plaintiff attended approximately ten exhibits. At the time of the hearing in May 1994, Plaintiff had already attended three exhibits for the year and said he takes part in conducting inventory of the company every six weeks. (Tr. 28–29).

Plaintiff testified that in the three years prior to the hearing, his business had decreased drastically. (Tr. 28). In 1991 the corporate tax return gross receipts were $671,000. In 1992, the receipts were $489,-000 and in 1993 they were $349,000. Plaintiff testified that competition caused the business to diminish in addition to the fact that the school systems did not have as much money available for purchase of his product. (Tr. 28–29).

Plaintiff reported that the corporate minutes did not show that he retired on a particular date. He did not formally retire by resigning from the corporation. He just basically had a discussion with his wife at which time he discussed that he would like to slow down. (Tr. 34).

## III.

### RECORDS BEFORE THE ALJ

The ALJ had Plaintiff's federal and state tax returns before him for the years 1990 (Tr. 142–163, 204–208), 1991 (Tr. 111–126), 1992 (Tr. 62–92) and 1993 (Tr. 214–254). The ALJ also had access to the federal and state corporate tax returns for 1990 (Tr. 164–188), 1991 (Tr. 127–138), 1992 (Tr. 93–110) and 1993 (Tr. 255–258).

Plaintiff's 1991 income tax return for he and his wife shows a total joint income of $242,620, of which $198,310 was attributable to wages. (Tr. 111). Plaintiff and his wife were paid $59,000 each in salary from Book Lures, Inc. (Tr. 128).

Plaintiff's 1992 income tax return for he and his wife shows a total joint income of $164,834, of which $125,035 was attributable to wages. (Tr. 62). Of the total wages, Plaintiff made $59,000 from Book Lures, Inc. and Plaintiff's wife made $59,000 from Book Lures, Inc. In addition, Plaintiff's wife also earned $3,015 from St. Charles Community College and $4,020 from Lindenwood College. (Tr. 79).

Plaintiff's 1993 income tax return for him and his wife show a total joint income of $190,740, of which $136,262 was attributable to wages. (Tr. 214). The return showed wages received by Plaintiff from Book Lures, Inc. in the amount of $2,352, and wages received by his wife from Book Lures, Inc. in the amount of $126,500. (Tr. 238). In addition, Plaintiff's wife earned $3,060 from St. Charles Community College and $4,350 from Lindenwood College. (Tr. 238).

The 1990 Corporation Income Tax Return (for fiscal year ending February 28, 1991) showed a corporate income of $384,617. (Tr. 164). It also showed that Plaintiff devoted 100% of his time to the business and his wife devoted 50% of her time to the business. (Tr. 165).

The 1991 Corporation Income Tax Return (fiscal year ending February 28, 1992) showed a corporate income of $386,796. (Tr. 127). It also showed that Plaintiff's wife devoted 50% of her time to the company and Plaintiff devoted 100% of his time to the corporation. (Tr. 128).

The 1992 Corporation Income Tax Return (fiscal year ending February 28, 1993) showed a corporate income of $308,420. (Tr. 93). It also showed that Plaintiff's wife devoted 50% of her time to the company and Plaintiff devoted time to the business "as required." (Tr. 94). Plaintiff and his wife each owned 50% of the corporation's stock. (Tr. 99).

The preliminary copy of the 1993 Corporation Income Tax Return for Book Lures, Inc.

(fiscal year ending February 28, 1994) showed a corporate income of $202,424. (Tr. 255). It showed that Plaintiff was still an officer of the corporation, but that he devoted no time to the business and his wife continued to devote 50% of her time to the company. (Tr. 256).

On October 19, 1992, Plaintiff filled out a "Self–Employment/Corporation Officer Questionnaire" for the Social Security Administration. He stated in that questionnaire that he retired from his position as president of Book Lures on February 28, 1992. (Tr. 209). He also stated that prior to February 28, 1992, he planned the printing of the books, planned the exhibitions of the product, functioned as the personnel manager, did the bookkeeping and banking and oversaw the day-to-day operations of the company. He reported that he averaged about sixty hours per week, fifty-two weeks per year. Since his retirement, he reported that he did not work in the business at all, working zero hours per week. (Tr. 210). He stated that his wife and daughter took over his former duties and that his wife's salary increased from $60,000 to $80,000 as a result. (Tr. 211). Plaintiff stated that he expected to earn approximately $10,000 in 1992 and nothing in 1993. (Tr. 211). Plaintiff reported on the form that, subsequent to his retirement, his wife became the president of the company. (Tr. 212).

The Social Security Administration had contacts with two business associates of Plaintiff. Mr. Paul Stewart at Gateway Printing informed the Administration in October 1992 that he had continued to do business with Plaintiff since Plaintiff's alleged retirement date in February 1992. Ms. Melba Occonnel from Cave Springs Travel informed the Administration that Plaintiff continued to make travel plans for Book Lures, Inc. (Tr. 45–46).

## IV.

### *DETERMINATION OF THE ALJ*

After considering the evidence of record, the ALJ made the following findings. For Social Security Purposes, Plaintiff attained the age of 65 on January 13, 1993. Plaintiff

and his wife, Nancy Polette, controlled the operation of Book Lures, Inc. In 1992, Plaintiff's wages from Book Lures, Inc. were $59,000 and his wife's wages from Book Lures, Inc. were $59,000. In 1993, Plaintiff reported wages from Book Lures, Inc. were $2,352.00 and his wife's wages from Book Lures, Inc. were $126,500. (Tr. 10–11).

The ALJ found that Plaintiff's testimony regarding whether he had retired was not credible. He found that although Plaintiff's wife's salary increased by almost double, her duties in 1993 with the corporation were not increased from 1992. Thus, the ALJ found that Plaintiff's 1993 wages were merely shifted to his wife to make him appear eligible for Social Security Retirement Insurance Benefits. The ALJ imputed wages of $5,000 a month to Plaintiff for all months of 1993 from Book Lures, Inc. This resulted in deductions reducing Plaintiff's Social Security Benefits in 1992 and 1993. (Tr. 11).

It was therefore the decision of the ALJ that, pursuant to Section 203 of the Social Security Act, Plaintiff had not overcome his presumption that he earned wages for more than the applicable exempt amount in 1992 and 1993, and that in fact his wages were actually at least $5,000 a month in those years. Thus, Plaintiff was not entitled to Retirement Insurance Benefits. (Tr. 11).

## V.

### *ANALYSIS*

The ALJ's decision is conclusive upon this Court if it is supported by "substantial evidence." *Onstead v. Sullivan,* 962 F.2d 803, 804 (8th Cir.1992); *Cline v. Sullivan,* 939 F.2d 560, 564 (8th Cir.1991). It is not the job of the Court to reweigh the evidence or review the factual record *de novo. McClees v. Shalala,* 2 F.3d 301, 302 (8th Cir.1993); *Murphy v. Sullivan,* 953 F.2d 383, 384 (8th Cir.1992). Instead, the Court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994); *Onstead,* 962 F.2d at 804. Weighing the evidence is a function of the ALJ, who is the fact-finder. *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987).

■ Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir.1984). In *Bland v. Bowen,* 861 F.2d 533 (8th Cir.1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

*Id.* at 535. *See also Metcalf v. Heckler,* 800 F.2d 793, 794 (8th Cir.1986); *Clark v. Heckler,* 733 F.2d at 68. Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion. *Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir.1991); *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989).

■ The Social Security Act sets forth specific requirements to be eligible for retirement benefits. "Every individual who—(1) is a fully insured individual [as defined in 42 U.S.C. § 414(a) ], (2) has attained age 62, and (3) has filed application for old-age insurance benefits ... shall be entitled to an old-age insurance benefit for each month...." 42 U.S.C. § 402(a). A wage earner who is eligible for social security benefits may not work or engage in self-employment which results in income to him of over a certain amount per year. 42 U.S.C. §§ 403(b) and (f). In an action to determine the right to retirement benefits, the burden of proving entitlement to retirement benefits rests with the plaintiff. *Martin v. Sullivan,* 894 F.2d 1520, 1532 (11th Cir.1990). *See also* 42 U.S.C. § 403(f)(4)(A) and (B).

Pursuant to 42 U.S.C. §§ 403(b) and (f) of the Social Security Act, as applicable to taxable year 1993, a beneficiary over the age of 65 could earn $10,560, without any loss of benefits. For taxable years beginning after December 31, 1989, $1.00 is deducted for every $3.00 earned over the exempt amount for people age 65 to 69. *Id.*

■ The ALJ has the authority and the obligation to examine substance over form, determine the bona fides of family business transactions and pierce fictitious family financial arrangements created only to make a claimant eligible for retirement insurance benefits. *Martin v. Sullivan,* 894 F.2d at 1532–33; *Heer v. Secretary of Health and Human Services,* 670 F.2d 653, 655 (6th Cir. 1982). While retirement in order to receive social security benefits is permissible, the ALJ must be assured that the alleged retirement is legitimate, actual and bona fide. *Martin,* 894 F.2d at 1532.

■ Before "piercing the veil" of "fictitious family salary arrangements" designed to give the appearance of retirement, the following factors should be considered:

1. Whether the claimant continues to contribute substantial and valuable services to the corporation;

2. Whether the family member receiving the income increases his or her duties commensurate with the increase in salary; and

3. Whether the family member's income is used to support the claimant.

*Martin,* 894 F.2d at 1532; *Heer,* 670 F.2d at 655.

■ The issue before the Court is whether substantial evidence supports the ALJ's determination that Plaintiff earned more than the applicable exempt amount in 1992 and 1993. *Onstead v. Sullivan,* 962 F.2d 803, 804 (8th Cir.1992). Reversal is not appropriate even if the Court, sitting as a finder of fact, would have reached a contrary result. *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir.1992).

■ Plaintiff states that substantial evidence does not support the ALJ's determination. Specifically, Plaintiff claims that the ALJ failed to make a specific finding under the essential factors for analyzing and penetrating the superficiality of a family owned corporation which would support his determination that Plaintiff improperly shifted his income to his wife in 1993. Defendant disagrees. Upon reviewing the administrative

record as a whole, the undersigned finds that the decision of the ALJ in the instant cause of action is supported by substantial evidence. An application of the facts set forth in *Martin* and *Heer, supra,* supports the ALJ's conclusion that Plaintiff's "retirement" and his wife's simultaneous increase in pay, were a fictitious family salary arrangement.

First, with respect to the issue of whether Plaintiff continued to contribute substantial and valuable services to the corporation, substantial evidence suggests that he did. Although it is unclear how many hours Plaintiff worked for the company, the evidence indicated that Plaintiff continued to be a corporate officer of Book Lures, Inc. Plaintiff claimed that he resigned from the corporate presidency in February 1992 and asserted that his wife and daughter assumed his duties. However, he never formally resigned from the corporation and the corporate minutes do not reflect anything about his retirement. Moreover, the company's 1992 and 1993 corporate tax returns continued to list Plaintiff as an officer of the corporation.

Furthermore, prior to Plaintiff's alleged retirement, Plaintiff attended forty exhibits per year, picked up books from the warehouse and handled the mailing. After his purported retirement, although he testified that he attended fewer exhibits, he still picked up books from the warehouse and handled the mailing. Moreover, Mr. Stewart stated that he continued to do business with Plaintiff and Ms. Occonnel stated that Plaintiff continued to make travel plans for Book Lures, Inc. The ALJ correctly concluded that although Plaintiff stated that he was going to fewer shows in 1993, the evidence did not show that his other duties were declining to any great degree.

Second, the ALJ considered the fact that Plaintiff's wife's salary from the company doubled from about $60,000 to $125,000 in one year at the same time that Plaintiff's salary dropped from about $60,000 in one year to almost nothing in the next year. More significantly, the ALJ found that the evidence did not suggest an increase in Plaintiff's wife's duties commensurate with the increased salary. Specifically, although Plaintiff's wife's income doubled, the corporate tax returns show that she continued to consistently contribute only 50% of her time to the business and there is no evidence of a great increase in her duties in 1993. Although Plaintiff testified that the business was declining, which would explain why his duties had declined and his wife's had not increased, in reality, the company paid him and his wife a greater combined salary in 1992 than in 1991.

Third, there is no evidence that Plaintiff and his wife did not reside together. Moreover, there was no evidence presented showing that Plaintiff did not rely on his wife's substantial income as a means of support.

Analyzing the above factors, the Court finds that substantial evidence on the record as a whole supports that ALJ's determination that Plaintiff had not retired as he asserted. As part of the ALJ's determination, the ALJ found Plaintiff's testimony that he had reduced his involvement in the company not to be entirely credible.

■■■■■ The Court finds that substantial evidence supports the ALJ's credibility determination. The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. *Hutsell v. Sullivan,* 892 F.2d 747, 750 (8th Cir.1989); *Sykes v. Bowen,* 854 F.2d 284, 287 (8th Cir.1988). The Court finds the reasons offered by the ALJ in support of his credibility determination to be based on substantial evidence. For example, the corporate tax return for 1993 showed that Plaintiff devoted no time to the business in 1993. However, Plaintiff testified otherwise, stating specifically he attended about ten exhibition shows in 1993. In addition, although Plaintiff stated that the business was in decline, as stated earlier, the company paid Plaintiff and his wife a greater combined salary in 1992 than it did in 1991. For these and other reasons, the ALJ properly found that Plaintiff's testimony with respect to his declining duties had to be viewed with skepticism. The Court finds that the ALJ's credibility finding is supported by substantial evidence on the record as a whole. *Hutsell,* 892 F.2d at 750; *Sykes,* 854 F.2d at 287.

Therefore, the findings of the ALJ must be affirmed.

## VI.

### *CONCLUSION*

The ALJ's determination is supported by substantial evidence on the record as a whole. Specifically, substantial evidence on the record as a whole supports the ALJ's determination that Plaintiff failed to carry his burden of establishing that he did not render services for wages of more than the applicable exempt amount pursuant to 42 U.S.C. § 403(f)(4)(B). Therefore, the ALJ's determination will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **DENIED.** [11]

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **GRANTED.** [13]

**IT IS FINALLY ORDERED** that a separate judgment will be entered in the instant cause of action this same date.