25 F.Supp.2d 1017 (1998)
Don BORCHELT, Plaintiff,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant.
No. 1:97CV00022 MLM.
United States District Court, E.D. Missouri, Eastern Division.
September 18, 1998.
Stephen P. Gray, Marble Hill, MO, for Don Borchelt, plaintiff.
Maria C. Sanchez, Office of U.S. Attorney, St. Louis, MO, for Social Security Administration, Shirley S. Chater, defendant.

MEMORANDUM AND ORDER
MEDLER, United States Magistrate Judge.
This is an action under Title 42 U.S.C. § 405(g) for judicial review of Defendant Kenneth S. Apfel's ("Defendant's") final decision denying Plaintiff Don Borchelt's ("Plaintiff's") appeal of the determination made by the Social Security Administration that Plaintiff had been overpaid social security benefits. Both parties have moved for summary judgment [16][19] and have consented to the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). [4][8].

I. Procedural History
Plaintiff filed an application for social security disability benefits in June, 1978, pursuant to Title II of the Social Security Act, and was awarded benefits in 1978. (Tr. 44, 47-50). From May, 1992 through June, 1993, Plaintiff was incarcerated in a federal facility for unlawful possession of a firearm. (Tr. 9-10, 24-25); (United States of America v. Borchelt, Cause No. 1:91CR31-SNL (E.D.Mo.1997)); (Tr. 83-86). At the time of sentencing, the court recommended to the Bureau of Prisons that "[t]he defendant should be sent to an institution where he can participate in a substance abuse program". (Id., Tr. 83). While incarcerated Plaintiff received $14,121.80 in Social Security disability benefits. (Tr. 39, 54). Plaintiff testified that he was unaware of the need to notify the Social Security Administration about his incarceration for a felony. (Tr. 33).[1] In May, *1018 1993, the Social Security Administration wrote to Plaintiff and indicated that he was not eligible for disability benefits because of his imprisonment for a felony. (Tr. 57). Plaintiff was further notified in a letter dated July 19, 1993, that he had been overpaid by $14,121.80. (Tr. 54-55). Plaintiff did not file a request for reconsideration within the thirty days, or even the sixty days, as directed in the July letter. (Tr. 54-55).[2] On April 12, 1994, Plaintiff sent a "Statement of Claim or Other Person" notice to the Social Security Administration, requesting another copy of his "overpayment letter of $14,121.80 to give to my attorney for an appeal on the overpayment." (Tr. 76). Plaintiff eventually appealed the determination, which was denied. (Tr. 54-58). After a hearing on July 28, 1995, an administrative law judge ("ALJ") found that Plaintiff was not entitled to disability benefits of $14,121.80 which he received while he was incarcerated. (Tr. 7-12) The Appeals Council of the Social Security Administration denied Plaintiff's request for review on December 9, 1996. (Tr. 2-3)
The Social Security Administration withheld $14,121.80 from Plaintiff in Social Security benefits in the months that followed his imprisonment, August, 1993 through June, 1994. (Tr. 10-11, 39). His benefits resumed after June, 1994, but then stopped again in March, 1995. Plaintiff now seeks a repayment of the amount at issue. (Tr. 39).

II. Findings of the Administrative Law Judge ("ALJ")
The Administrative Law judge made the following findings of fact.
1. The claimant was incarcerated for possession of a firearm from May 1992 through June 1993.
2. Social Security regulations stipulate that no monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony.
3. While incarcerated, the claimant received $14,121.80 in Social Security Disability Benefits.
4. No rehabilitation program was specifically approved for the claimant by a court of law, as it was only recommended that the claimant be sent to an institution where he could participate in a substance abuse program.
5. Social Security regulations stipulates [sic] that the Secretary must determine that the rehabilitation program is expected to result in the incarcerated individual being able to do substantive gainful activity upon release within a reasonable time.
6. The rehabilitation program the claimant was engaged in could not reasonably have been expected to result in his being *1019 able to do substantial gainful activity, since the claimant has been and is disabled due to a back condition.
7. The claimant was sentenced to prison for a firearms violation, and his history of alcohol abuse has no bearing on that conviction and resulting prison sentence.
8. The claimant was not due Social Security benefits at any time he was incarcerated in prison.
9. If the claimant feels he is without fault regarding the overpayment and that repayment would cause financial hardship, he should contact the local Social Security office and apply for waiver of recovery of the overpayment.
(Tr. 11-12).
Thus, the ALJ determined Plaintiff was not entitled to the amount of benefits he received while incarcerated pursuant to his federal felony conviction.

III. Legal Standards
An ALJ's decision is conclusive upon the Court if it is supported by "substantial evidence." Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir.1992), Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir.1991). It is not the job of the Court to reweigh the evidence or review the factual record de novo. Naber v. Shalala, 22 F.3d 186, 188 (8th Cir.1994). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987).
The Eighth Circuit has recently reemphasized that the "substantial evidence" standard is "substantial evidence based upon the record as a whole" which "requires a more scrutinizing analysis" than a mere substantial evidence test. Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir.1998) (citing Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir.1987)), see also Burress v. Apfel, 141 F.3d 875, 878 (8th Cir.1998). The Eighth Circuit admonishes reviewing courts to review the entire record below. "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin v. Heckler, 811 F.2d, 1195, 1199 (8th Cir.1987).
"In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record." Wilcutts v. Apfel, 143 F.3d at 1136.
In Bland v. Bowen, 861 F.2d 533 (8th Cir.1988), the Eighth Circuit Court of Appeals held:
[t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.
Id., at 535. See also, Metcalf v. Heckler, 800 F.2d 793, 794 (8th Cir.1986); Clark v. Heckler, 733 F.2d at 68. Thus, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence on the record as a whole. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir.1984). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion. Onstead, 962 F.2d at 804; Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir.1991); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir.1989).
In this case, the Court is not reviewing a decision by ALJ concerning whether the plaintiff is disabled. Here, the ALJ made a determination that the Plaintiff was not entitled to the overpayments which were made during his incarceration.

IV. Analysis
Plaintiff's primary contention on appeal is that the Social Security Administration erred by withholding his disability benefits while incarcerated. Plaintiff argues that although he was incarcerated, he was still entitled to receive disability benefits because he was participating in an alcohol rehabilitation program. In fact, Plaintiff completed drug and alcohol treatment programs, obtained his "GED" (secondary school equivalency certificate), and participated in grief counseling and church services. Plaintiff contends that his circumstances fall within a statutory exception to the general rule that social security *1020 benefits are to be withheld when a recipient is imprisoned.
Defendant argues that 42 U.S.C. § 402(x) and 20 C.F.R. § 404.468 provide that disability benefits shall be withheld. "No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony." 20 C.F.R. § 404.468(a).
There is an exception to such withholding.
(D) Vocational rehabilitation exception. The nonpayment provision of paragraph (a) of this section does not apply if a prisoner who is entitled to benefits on the basis of disability is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for the individual by [a] court of law. In additional, the [Commissioner] must determine that the program is expected to result in the individual being able to do substantial gainful activity upon release and within a reasonable time. No benefits will be paid to the prisoner for any month prior to approval of the program.
20 C.F.R. § 404.468(d).[3]
Plaintiff and Defendant agree that this statute and rules promulgated pursuant to this statute are applicable here in that Plaintiff was incarcerated for a felony. They disagree about whether the Plaintiff's participation in his rehabilitation program met the requirements of § 404.468(d).
The purpose of social security benefits is to provide for basic needs of those unable to work in gainful employment. When a recipient is incarcerated, that need disappears for the duration of his incarceration because his basic needs are being met. Jensen v. Heckler, 766 F.2d 383, 385 (8th Cir.1985).
An exception to this general principle (which has since been repealed) was created to provide for those whose rehabilitation was vocational, that is, designed to enhance the prisoner's capacity to work after his incarceration.
The Senate Report which accompanied the legislation which carved out this vocational rehabilitation exception stated:
The committee believes that the basic purposes of the social security program are not served by the unrestricted payment of benefits to individuals who are in prison or whose eligibility arises from the commission of a crime. The disability program exists to provide a continuing source of income to those whose earnings are cut off because they have suffered a severe disability. The need for this continuing source of income is clearly absent in the case of an individual who is being maintained at public expense in prison. The basis for his lack of other income in such circumstances must be considered to be marginally related to his impairment at best.
The Committee bill therefore would require the suspension of benefits to any individual who would otherwise be receiving them on the basis of disability while he is imprisoned by reason of a felony conviction. This suspension would apply except to the extent that a court of law specifically provides to the contrary as a part of its approval of a plan of vocational rehabilitation services for the individual, and only for so long as the individual continues to participate satisfactorily in an approved vocational rehabilitation program which is expected to result in his return to substantial gainful employment.
Wilkins v. Chater, 953 F.Supp. 1192 (D.Kan. 1996) (citing 1980 U.S.Code Cong. & Ad. News 4787, 4794-4795, Senate Report No. 96-987, 96th Cong., 2nd Sess., upon the bill, H.R.5295); see also Casalvera v. Commissioner of Social Security, 998 F.Supp. 411, 412 (D.Del.1998); Washington v. Secretary of Health & Human Services, 718 F.2d 608, 610 (3rd Cir.1983).
*1021 This was clearly not the purpose of the rehabilitation program in this case. Although the programs Plaintiff attended may have improved his life, enhanced his personal development, and demonstrated admirable efforts while incarcerated, they clearly were not designed to make Plaintiff employable upon release. His disability  for which he had previously received disability benefits  was not a result of his alcohol problem. His disability arose from a bad back. (Tr. 47). There is nothing which indicates that an alcohol rehabilitation program would eliminate or even ameliorate the disability for which Plaintiff receives benefits.
Plaintiff also contends that his rehabilitation program was approved by the sentencing court. The ALJ found that this rehabilitation program was not approved by the sentencing court until after Plaintiff filed the present action.[4] The rule set forth in § 404.468(a) requires that, even if Plaintiff's rehabilitation program could be construed to be designed to prepare Plaintiff for employment after incarceration, Plaintiff has failed to meet the second prong of the requirement of § 404.468(a). That rule provides that, "No benefits will be paid to the prisoner for any month prior to approval of the program." 20 C.F.R. § 404.468(d). Clearly, the record supports the ALJ's conclusion that Plaintiff was improperly paid disability benefits while incarcerated.

V. Conclusion
Plaintiff was incarcerated pursuant to a plea of guilty to a federal felony charge of unlawful possession of a firearm. While incarcerated, Plaintiff received over $14,000 in benefits. The Social Security Administration determined that 42 U.S.C. § 402(x) and 20 C.F.R. § 404.468 provide that those disability payments were paid in error. While Plaintiff argues that his enrollment in drug and self-esteem programs falls within the parameters of the exception carved out at one time for prisoners enrolled in rehabilitation programs, the Court finds that substantial evidence on the record as a whole supports the ALJ's determination that the Plaintiff was not enrolled in a program which meets the requirements set forth by applicable statutes and rules. First, Plaintiff's participation in the program was not approved by the sentencing court until after his release from prison. Second, even if the program had been properly approved, that program was directed toward his use and abuse of alcohol and was not related to the disability for which Plaintiff has received benefits since 1978. The rehabilitation programs in which Plaintiff participated were not geared to "result in [this] individual being able to do substantial gainful activity upon release and with a reasonable time". 20 C.F.R. § 404.468(d). Indeed, Plaintiff continues to receive these benefits.[5]
Accordingly,
IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED. [14]
IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED. [16]
IT IS FINALLY ORDERED that a judgment of dismissal will be entered in this case on this same date.
NOTES
[1] The only information in the record related to this time period is a letter of inquiry from the Social Security Administration to the Records Manager of the Federal Medical Center in Rochester, Minnesota, requesting information about Plaintiff, including whether he was presently incarcerated for a felony conviction and the date his incarceration began. That letter was dated in hand-writing as April 3, 1993. (Tr. 66). The apparent response to this request is a letter dated May 7, 1993 from the Federal Medical Center, Federal Bureau of Prisons, Rochester, Minnesota, which is addressed "To Whom It May Concern" and which notes that Plaintiff is incarcerated at the Drug Abuse Program Unit, Federal Medical Center, Rochester, Minnesota pursuant to a sentence issued by the Eastern District of Missouri, to 18 months of custody by the Federal Bureau of Prisons, followed by two years of supervised release. (Tr. 104).

There is scant information in the record about why Plaintiff failed to notify the Social Security Administration. There is a hand-written letter from Plaintiff to Joseph Muffolett in which Plaintiff states, "I responded to a similar letter I received from your office in Minnesota, my checks continued to come after I made the response, and I assumed everything was okay. I did not receive any reply previously and the letter was similar in nature from a different office." This letter is undated. (Tr. 53).
In his decision, the administrative law judge ("ALJ") indicated that "if claimant is without fault and is unable to repay, an overpayment may be waived." (Tr. 11). The Plaintiff did not raise this issue before the ALJ, however. The ALJ goes on to say that if claimant believes this to be true, then he should "go to the Social Security office and complete necessary documentation." (Tr. 11).
The issue of fault is not before the Court because Plaintiff did not raise it below.
[2] The record indicates that, after release from the federal institution in Minnesota, Plaintiff was in jail "on DWI" from October 8, 1993 through January 6, 1994, and resided at Dismas House in Saint Louis, Missouri from January 6, 1994 through April 6, 1994. This unavailability does not, however, serve to explain the Plaintiff's delay in filing a request for reconsideration or waiver since this time period began after the expiration of the thirty days provided for in the suspension of repayment provisions in the July 19, 1993 notice to the Plaintiff. (Tr. 54-55). That letter indicates that, "If you request reconsideration and/or waiver within 30 days, the overpayment will not have to be recovered until the case is reviewed." (Tr. 55, Letter dated July 19, 1993).
[3] The Eighth Circuit has acknowledged that this rehabilitation exception has been eliminated for benefits payable as of the first of February, 1995. Rowden v. Warden, 89 F.3d 536, 537 n. 2 (8th Cir.1996) (citing Social Security Domestic Employment Reform Act of 1994, Pub.L. No. 103-387, § 4, 1994 U.S.C.C.A.N. (108 Stat.) 4071, 4076). Defendant does not argue that this exception was not in effect at the time Plaintiff was incarcerated.
[4] The Court took notice of that approval in United States of America v. Donald G. Borchelt, Cause No. 1:91CR31 (SNL) by Order granting the Plaintiff additional time in which to file his motion for summary judgment. [15]
[5] Plaintiff and Defendant agree that the Social Security Administration withheld fourteen (14) checks after Plaintiff's release from prison and has collected the overpayment it made to Plaintiff while he was incarcerated. (Tr. 33).